**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAST BRUNSWICK BD. OF EDUCATION, | |
| Plaintiff, | |
| v. | Civil Action No. 13-4623 (MAS)(TJB) |
| GCA SERVICES GROUP, INC., | **MEMORANDUM OPINION** |
| Defendant. | |

This matter comes before the Court upon Defendant GCA Services Group, Inc.'s ("Defendant" or "GCA") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Def.'s Br., ECF No. 10-1.) Plaintiff East Brunswick Board of Education ("Plaintiff" or the "Board") opposed the motion (Pl.'s Opp'n, ECF No. 14) and Defendant replied (Def.'s Reply, ECF No. 15). The Court has carefully considered the submissions and has decided the motion without oral argument pursuant to Local Civil Rule 78.1. For the following reasons, and other good cause shown, Defendant's motion is GRANTED.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

**A.  Material Facts**

On or about January 16, 2013, Plaintiff solicited bids for custodial services in accordance with the Public School Contracts Law, N.J. Stat. Ann. 18A:18A-1 *et seq.* (Pl.'s Counter Statement of Material Facts ("Counter SMF") ¶ 1, ECF No. 14-2; Def.'s Resp. ¶ 1, ECF No. 16.) Plaintiff circulated a document to prospective bidders regarding a prospective custodial services contract for the East Brunswick Public School District (the "District"), entitled Bid Specifications and Proposal Documents for Custodial Services, Bid Number 2014-01, dated Wednesday, February 27, 2013 ("Bid Specifications"). (Def.'s Statement of Undisputed Facts ("SUMF") ¶ 1, ECF No. 10-2; Pl.'s Resp. ¶ 1, ECF No. 14-1.)

The Board's Bid Specifications contain a provision entitled "BID SECURITY/BONDING REQUIREMENTS" which reads, in its entirety, as follows:

> **Bid Guarantee**
> Each bid proposal must be accompanied by either a certified check, cashier's check or a bid bond, and having as surety thereon a surety company approved by the Board in an amount of ten percent (10%) of the bid, but not in excess of $20,000.00, and made payable to the East Brunswick Board of Education, Middlesex County, New Jersey.
>
> All security, except those of the three apparent lowest responsible Contractors, will be returned, if requested, after ten (10) days from the opening of bids, Sundays and holidays excepted. The bid security of the remaining unsuccessful Contractors will be returned within three (3) days after the awarding of the contract and the approval of the Contractor's performance bond, Sundays and holidays excepted. Failure to submit a bid guarantee will result in rejection of the bid.
>
> **Compliance with bid security sections required: Yes**

(Def.'s SUMF ¶ 3; Pl.'s Resp. ¶ 3.) The Bid Specifications also provide that "[n]o contractor may withdraw a bid within sixty (60) working days after the actual date of the opening thereof." (Pl.'s Counter SMF ¶ 11.) In addition, the Board's Bid Specifications contain a provision entitled "LIQUIDATED DAMAGES FOR FAILURE TO ENTER INTO CONTRACTS" which reads, in its entirety, as follows:

> The successful Contractor upon failure or refusal to execute and deliver the contract and bond required within (10) days after he has received notice of the acceptance of his bid, shall forfeit to the Board as liquidated damages for such failure or refusal, the security deposited with his bid.

(Def.'s SUMF ¶ 4; Pl.'s Resp. ¶ 4.)

On February 14, 2013, the Board issued Addendum No. 1 to the Bid Specifications. (Pl.'s Counter SMF ¶ 4; Def.'s Resp. ¶ 4.) Question #6 of the addendum asked whether the Board's current custodial employees were unionized. The Board responded that the union representation status of individuals employed by the current custodial services provider is between the company and its employees and that the District had no information concerning any collective bargaining agreement. The Board also disclosed a June 14, 2012 agenda item that listed the hourly rates of the then-current custodial services provider. (Pl.'s Counter SMF ¶ 5; Def.'s Resp. ¶ 5.)

2

Defendant, a prospective bidder, received the Bid Specifications prior to submitting its bid, but made no inquiries to the Board before opening of the bids. (Def.'s SUMF ¶ 2; Pl.'s Resp. ¶ 2; Pl.'s Counter SMF ¶ 3; Def.'s Resp. ¶ 3.) On or about March 8, 2013, GCA submitted a bid to the Board in conformity with the Bid Specifications. (Def.'s SUMF ¶ 5; Pl.'s Resp. ¶ 5; Pl.'s Counter SMF ¶ 6; Def.'s Resp. ¶ 6.) In accordance with the Bid Specifications, GCA posted security in the amount of $20,000, in the form of a bid bond, along with its bid. (Def.'s SUMF ¶¶ 6-7; Pl.'s Resp. ¶¶ 6-7.)

On March 18, 2013, GCA sales representatives met with Joseph Crotchfelt, the District's assistant business administrator. The GCA representatives proffered that they were unaware the outgoing custodial services company employed unionized workers. They asked the District to reject all bids received and rebid the contract based on GCA's proposed changes to the Bid Specifications. (Pl.'s Counter SMF ¶¶ 7-8; Def.'s Resp. ¶¶ 7-8.) The request was deemed highly improper, so the meeting was immediately terminated. (Pl.'s Counter SMF ¶ 9.)

On March 21, 2013, GCA sent the Board correspondence withdrawing its bid. Notwithstanding GCA's attempted withdrawal, the Board awarded the bid to GCA that same day. (Def.'s SUMF ¶ 8; Pl.'s Resp. ¶ 8; Pl.'s Counter SMF ¶¶ 10, 12; Def.'s Resp. ¶ 10.) Despite having its bid accepted by the Board and being awarded the right to enter into the custodial services contract, GCA has refused to sign the contract. (Def.'s SUMF ¶ 9; Pl.'s Resp. ¶ 9.)

GCA was the lowest bidder by a cumulative $740,000 over the two (2) year period of the contract. (Pl.'s Counter SMF ¶ 15.) As a result of GCA's refusal to perform, the Board was forced to temporarily award the contract to the next lowest bidder at a substantially higher contractual amount. (*Id.* ¶ 14.)

On July 11, 2013, GCA tendered a $20,000 surety check to the Board's attorneys. (Def.'s SUMF ¶ 11; Pl.'s Resp. ¶ 11.) However, to date, the Board has declined to accept the surety check. (Def.'s SUMF ¶ 12; Pl.'s Resp. ¶ 12; Pl.'s Counter SMF ¶ 17; Def.'s Resp. ¶ 17.)

B.  **The Complaint**

On July 2, 2013, the Board sued GCA in the Superior Court of New Jersey, County of Middlesex. (Not. of Removal ¶ 1, ECF No. 1.) Thereafter, on July 31, 2013, Defendant removed the state court action to this Court, pursuant to 29 U.S.C. §§ 1441, 1446, based on diversity jurisdiction under 28 U.S.C. § 1332. (*Id.* ¶¶ 3-5.)

Plaintiff's Complaint claims "significant financial loss" based on Defendant's alleged breach stemming from GCA's refusal to fulfill its contractual obligations. (Compl. ¶¶ 10-12.) As such, Plaintiff's two-count Complaint seeks compensatory damages or, alternatively, specific performance. (*Id.* ¶¶ 13-19, 21.)[1]

II.  **STANDARD OF REVIEW**

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

---

[1] Discovery was stayed pending disposition of the instant motion for summary judgment.

4

## III. DISCUSSION

The contract under consideration by the Court is not the custodial services contract referred to in the invitation to bid, but the contract formed "by virtue of [P]laintiff's acceptance of [D]efendant's bid, submitted in response to [P]laintiff's invitation, [which] obligated [D]efendant to enter into the [custodial services] contract with [P]laintiff." *Bd. of Educ. of the Borough of Fairlawn v. Fair Lawn Plaza Taxi, Inc.*, 55 N.J. Super. 357, 361 (App. Div. 1959), *aff'd*, 32 N.J. 129 (1960); *see also Lupfer v. Bd. of Chosen Freeholders of Atl. Cnty.*, 87 N.J. Eq. 491, 497 (Ch. 1917).

The issue is whether the liquidated damages provision in the Board's Bid Specifications is enforceable and, therefore, Plaintiff's sole remedy for Defendant's refusal to enter into the custodial services contract. The Court finds that the liquidated damages provision is reasonable, and not unconscionable, limiting Plaintiff's remedy to the amount of Defendant's bid bond.

### A. Parties' Positions

Defendant moves for summary judgment asserting that the liquidated damages provision in the Board's Bid Specifications is "the exclusive remedy agreed upon by the parties in the event of a withdrawn bid[.]" (Def.'s Br. 6, 8.) Relying on this assertion, GCA contends it is entitled to summary judgment as a matter of law because it tendered a $20,000 check, its bid security deposit, to the Board in accordance with the Bid Specifications. (*Id.* at 8.)

On the other hand, the Board seeks damages exceeding the liquidated damages or specific performance of the custodial services contract. In support of its position, the Board urges the Court to deem the liquidated damages clause unenforceable for three reasons: (1) the clause is unconscionable; (2) Plaintiff is entitled to compensatory damages; and (3) liquidated damages were not intended to be Plaintiff's sole remedy. (Pl.'s Opp'n 5-6, 8, 15.)

### B. The Liquidated Damages Provision is Reasonable

GCA seeks to enforce the liquidated damages provision contained in the Bid Specifications. Meanwhile, the Board seeks actual damages or specific performance claiming that the liquidated

5

damages clause is unconscionable and an unreasonable penalty. As mentioned above, the Board's Bid Specifications contain the following liquidated damages clause:

> **LIQUIDATED DAMAGES FOR FAILURE TO ENTER INTO CONTRACTS**
> The successful Contractor upon failure or refusal to execute and deliver the contract and bond required within (10) days after he has received notice of the acceptance of his bid, shall forfeit to the Board as liquidated damages for such failure or refusal, the security deposited with his bid.

(Def.'s SUMF ¶ 4; Pl.'s Resp. ¶ 4.)

In New Jersey, liquidated damages are subject to the test of reasonableness, that is, whether the stipulated damages clause is reasonable under the totality of the circumstances. *Metlife Capital Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 159 N.J. 484, 493-95 (1999). "Treating reasonableness 'as the touchstone,' . . . the difficulty in assessing damages, intention of the parties, the actual damages sustained, and the bargaining power of the parties all affect the validity of a stipulated damages clause." *Id.* at 495 (quoting *Wasserman's Inc. v. Middletown*, 137 N.J. 238, 252 (1994)). In evaluating a liquidated damages clause, the court looks to the reasonableness of the clause "either at the time of contract formation or at the time of the breach." *Naporano Assocs., L.P. v. B & P Builders*, 309 N.J. Super. 166, 176 (App. Div. 1998) (citation omitted). The party challenging the reasonableness of the liquidated damages clause bears the burden of proving the clause unreasonable. *Metlife*, 159 N.J. at 496 (citation omitted). Ultimately, whether a stipulated damages clause is enforceable "is a question of law for the court to decide." *Naporano Assocs.*, 309 N.J. Super. at 176 (citation omitted).[2]

The liquidated damages clause was reasonable at the time the contract was formed. First, the record reveals, and neither party disputes, that both parties are sophisticated, so the liquidated damages

---

[2] Although the non-breaching party typically seeks to enforce a liquidated damages provision, the roles are reversed here: the breaching party—GCA—seeks to enforce the liquidated damages provision and the non-breaching party—the Board—seeks damages in excess of the liquidated damages provision. Regardless of the party seeking to enforce the provision, "the [reasonableness] analysis is the same." *Naporano Assocs.*, 309 N.J. Super. at 176-77.

clause is presumed reasonable. *Wasserman's*, 137 N.J. at 253; *Naporano Assocs.*, 309 N.J. Super. at 176; *see also Travelodge Hotels, Inc. v. Govan*, 155 F. App'x 235 (6th Cir. 2005) (unpublished) (applying New Jersey law). There is nothing in the record to suggest that unequal bargaining power existed in the context of GCA bidding for the custodial services contract. Consequently, the Board bears the burden of demonstrating that the liquidated damages clause is otherwise unreasonable.

Second, an estimation of actual damages, which the Board asserts is the $740,000 difference between GCA's bid and the next lowest bid, was difficult to determine when GCA submitted its bid. *See Wasserman's*, 137 N.J. at 250 (courts must consider whether harm is uncertain or very difficult to estimate). The Board has not directly disputed this point. The amount of damage Plaintiff would suffer as a result of a breach by Defendant—refusing to enter into the custodial services contract—was not in any way certain. It would naturally vary depending on the amount of Defendant's bid compared to the bids of others competing for the custodial contract, which were submitted under seal. (*See* Decker Decl., Ex. 1 at 3.) Even though the Board asserts what appears to be an estimate of its actual damages now, that figure says nothing about the parties' ability to estimate damages at the time the contract was formed. In effect, Plaintiff has failed to present any evidence on an issue that was its burden to prove. *Travelodge Hotels*, 155 F. App'x at 237.

Third, the liquidated damages clause is a reasonable forecast of actual harm due to breach. For this consideration, the liquidated damages must reasonably relate to provable damages resulting from the breach. *Sugarman v. Gabriel Bldg. Grp., Inc.*, 2014 WL 3798785, at *8 (N.J. App. Div. Aug. 4, 2014) (unpublished) (citing *Wasserman's*, 137 N.J. at 249). Plaintiff disputes this point by claiming the liquidated damages clause is unconscionable. Due to the difficulty of estimating damages at the time the contract was formed, the Court will look at what damages are permitted by statute in the event a successful bidder refuses to enter into the bid-for contract. *See Metlife*, 159 N.J. at 497 (considering what is permitted by statute and industry standards in analyzing the validity of a fixed percentage late charge on commercial mortgages). It is undisputed the New Jersey Legislature has endorsed the

7

guarantee of 10% of the bid not to exceed $20,000 via N.J. Stat. Ann. 18A:18A-24[3] for public school contracts and in other contexts as well. *See, e.g.*, N.J. Stat. Ann. 40A:11-21 (bidding on contracts for erection, alteration, or repair of a public building). Those statutes not only demonstrate that the New Jersey legislature has "endorsed" the guarantee of 10% of a bid, not to exceed $20,000, but also suggests that this amount is not unusual or unreasonable in the public bidding context. *See Metlife*, 159 N.J. at 498.

Furthermore, the liquidated damages clause is not unconscionable rendering it unenforceable. The Board avers the liquidated damages provision is unconscionable because the amount of the liquidated damages—$20,000—is unreasonably or unconscionably low compared to the purported actual damages—$740,000—suffered by the Board. (Pl.'s Opp'n 5-6.) Plaintiff's position is unpopular, but finds support in the Restatement (Second) of Contracts § 356, which notes that "[a] term that fixes an unreasonably small amount as damages may be unenforceable as unconscionable."

"Under New Jersey law, unconscionability cases 'look for two factors: (1) unfairness in the formation of the contract, and (2) excessively disproportionate terms." *Travelodge Hotels, Inc. v. Honeysuckle Enters.*, 357 F. Supp. 2d 788, 801 (D.N.J. 2005) (quoting *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 564 (Ch. Div. 2002)). These two factors have been referred to as "procedural" unconscionability and "substantive" unconscionability. *Id.* Procedural unconscionability focuses on the circumstances of the negotiation that produced the contested term, especially the personal qualities

---

[3] Public Schools Contract Law permits school boards to require bidders to submit a guarantee with the bid to ensure that the winning bidder will enter into the bid-for contract. N.J. Stat. Ann. 18A:18A-24 provides, in pertinent part:

> There may be required from any person bidding on any contract, advertised in accordance with law, that the bid be accompanied by a guarantee payable to the board of education that, if the contract is awarded to the bidder, the bidder will enter into a contract therefor and will furnish any performance bond or other security required as a guarantee or indemnification. The guarantee shall be in the amount of 10% of the bid, but not in excess of $20,000.00, except as otherwise provided herein, and may be given, at the option of the bidder, by certified check, cashier's check or bid bond.

of the negotiators. *See, e.g., Delta Funding Corp. v. Harris*, 189 N.J. 28, 55 (2006) (Zazzali, J., concurring and dissenting) (citing *Sitogum Holdings*, 352 N.J. Super. at 564) (listing "inadequacies" such as "age, literacy and lack of sophistication"). Substantive unconscionability, on the other hand, "describes an exchange of promises that is so one-sided as to 'shock the conscience' of the court." *Travelodge Hotels*, 357 F. Supp. 2d at 801. Finally, New Jersey courts generally apply a "sliding-scale approach" to determine overall unconscionability by considering the relative levels of both procedural and substantive unconscionability. *Delta Funding Corp.*, 189 N.J. at 40.[4]

The liquidated damages clause is neither procedurally nor substantively unconscionable. "Based on this record, no reasonable jury could conclude that the relative positions of the parties or the exchange of material promises disproportionately favored [GCA] so as to establish unconscionability." *Travelodge Hotels*, 357 F. Supp. 2d at 802 (granting summary judgment on counterclaim asserting unconscionability). Not only does the New Jersey Public School Contracts Law provide the sum to be guaranteed in the event a bidder fails or refuses to enter into the contract, but it is undisputed that the Board drafted the contract, including the liquidated damages clause at issue. The Board should not be heard now to complain about a contract clause, which it agreed would apply to a contractual breach by a bidder, such as the winning bidder's refusal to enter into the custodial services

---

[4] The Court does not find—and Plaintiff does not assert—that this contract is one of adhesion, in which case the Court would consider the following factors: "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motiving the 'adhering' party, and the public interests affected by the contract." *Delta Funding Corp.*, 189 N.J. at 55 (Zazzali, J., concurring and dissenting) (citing *Rudbart v. N.J. Dist. Water Supply Comm'n*, 127 N.J. 344, 356 (1992)).

contract.[5] "To hold otherwise under the circumstances of the case would make a better contract for the [Board] than [it] made for [itself]." *Sugarman*, 2014 WL 3798785, at *11.[6]

### C. The Board is Not Entitled to Compensatory Damages

Because the liquidated damages clause is reasonable and enforceable, Plaintiff is precluded from recovering actual damages. *Fair Lawn*, 55 N.J. Super. at 368; *see also Stone, Sand & Gravel Co. v. United States*, 234 U.S. 270 (1913) (claimant bound by liquidated damages agreement and thereby barred from recovering actual damages incurred as result of breach); *Bellefonte Borough Auth. v. Gateway Equip. & Supply Co.*, 442 Pa. 492, 496-97 (1971) ("The instructions to bidders clearly and expressly provided that the amount of the bond should, in the event of default, be considered as liquidated damages . . . . [I]n the case at bar . . . the actual damages incurred by the Authority was less than the amount of the bond. Had the actual damages been more than the amount of the bond, the Authority would have been limited to recovery only of the amount of the bond.") (citation omitted).

The *Fair Lawn* decision, in which the Appellate Division held that the forfeiture of a bidder's deposit is liquidated damages excluding a remedy for actual damages, is instructive on this point. 55 N.J. Super. at 368. In *Fair Lawn*, a board of education awarded defendant, the lowest bidder, a school

---

[5] The weight of authority is against Plaintiff's theory of "unconscionably low" liquidated damages. *See Kunelius v. Town of Stow*, 588 F.3d 1 (1st Cir. 2009) (noting weight of authority against "relatively novel" theory and possibility of grossly underestimated liquidated damages being set aside, but holding that liquidated damages for 2%—$19,000—of real estate purchase price—$1.16 million—was reasonable); *see also Monsen Eng'g Co. v. Tami-Githens, Inc.*, 219 N.J. Super. 24, 252-53 (App. Div. 1987) ("[I]n the context of commercial parties having comparable bargaining power, there should be presumptive validity of a liquidated damages clause . . . . It would do as much violence to this principle for the clause to be avoided in favor of the contractee as the contractor.") (internal citation omitted).

[6] Relying on *O'Connor v. Tyrrell*, 53 N.J. Eq. 15 (Ch. 1895), a real estate contract case, Plaintiff also asserts that Defendant's "arbitrary refusal" to perform should not excuse Defendant from fulfilling its obligations under the contract. (Pl.'s Opp'n 6-7.) In *O'Connor*, the court determined that the "intended" meaning of the term "failure," in the stipulated damages clause at issue, was action predicated on "earnest effort" by the party to deliver the deed. 53 N.J. at 19. The court's decision was based on the circumstances and intent of that particular stipulated damages clause and cannot be applied under the vastly different circumstances of this case.

10

transportation contract. Despite the award, defendant tried to withdraw its bid and advised the school board that it would not enter into the contract. In light of the breach, the school board retained defendant's deposit of $108.42 and the trial court awarded the school board $989.58 in compensatory damages, which was the difference between defendant's bid and the next lowest bidder less the $108.42 deposit. On appeal, the court reversed the award of compensatory damages:

> Regardless of the basis for the deposit requirement, whether it be as the result of contract or in obedience to statutory mandate, its purposes are the same. [To] establish [ ] and measur[e] 'the obligation of persons who seek the contract' . . . ; 'a guaranty that the contract will be entered into if the bid is accepted'; as 'an aid to the governing body in reaching its decision'; and . . . to reimburse the municipality for its loss and expense flowing from the wrongful act of a bidder in declining to enter into a contract for the performance of the work after the contract was lawfully awarded to him.
>
> **We construe the statute (N.J.S.A. 18:14-11) to mean that when the deposited amount is legally forfeited it shall be considered as liquidated damages and there is no justification for the recovery of damages in addition thereto.**

*Fair Lawn*, 55 N.J. Super. at 368 (construing N.J. Stat. Ann. 18:14-11, which states, in pertinent part, "Each transportation bid shall be accompanied by . . . a cashier's or certified check for 5% [o]f the annual amount of the contract, which deposit shall be forfeited upon the refusal of the bidder to execute a contract[.]") (citations omitted and emphasis added).

### D. The Board is Not Entitled to Specific Performance

In any contract "a court's paramount consideration is the intent of the parties." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980) (citation omitted). The Board urges the Court to deny summary judgment claiming it was not the Board's intent for liquidated damages to be a substitute for specific performance. As such, GCA cannot be excused from its contractual obligations by paying liquidated damages. (Pl.'s Opp'n 17.) Defendant rejects this assertion and contends the language of the liquidated damages provision is clear and unambiguous on its face, so the clause must be afforded its plain meaning. (Def.'s Reply 15.)

11

Here, the clause is only susceptible of one reasonable interpretation. It is clear and unequivocal in its intent to set a fixed amount of damages for failure to enter into the contract. *Mellon Bank*, 619 F.2d at 1009 ("The strongest external sign of agreement between contracting parties is the words they use in their written contract."); *Integrated Health Res., LLC v. Rossi Psychological Grp., P.A.*, 537 F. Supp. 2d 672, 674 (D.N.J. 2008) ("Ideally, the clearest indication of the parties' intent is the language of the contract itself.") (citation omitted). Nothing in the provision itself indicates that the Board reserved the option to seek damages beyond those specified by the liquidated damages clause. As such, the Court will not "torture the language [of the provision] to create ambiguities," *Wall Street Aubrey Golf, LLC v. Aubrey*, 189 F. App'x 82, 85 (3d Cir. 2006) (citation omitted), and will enforce the contract as written. *Integrated Health Res.*, 537 F. Supp. 2d at 674-75 ("Thus, when the language of the contract is unambiguous, that is, when the contract is 'reasonably capable of only one construction' . . . the inquiry ends and the court must enforce the contract as written.") (citation omitted).

Even assuming the contract is ambiguous, there is no evidence in the record that the Board's intent was to provide itself with alternative remedies, such as specific performance or compensatory damages, if a bidder refuses to enter the contract. *Monsen*, 219 N.J. Super. at 253 n.6 ("We see no impediment to a contract which could have provided the injured party with the alternative remedies of liquidated damages or any greater actual damages warranted by the proofs. Since this alternative was not included in the contract here, we will enforce the parties' agreement as written."). The Board states now, in its motion papers, that it did not intend for liquidated damages to be its sole remedy but has failed to point to any evidence in the record to support this interpretation of the contract. Furthermore, if a contract is ambiguous, as a general matter, it is "strictly construed against the draftsman," *i.e.*, the Board. *In re Estate of Miller*, 90 N.J. 210, 221 (1982) (citation omitted).

Accordingly, Plaintiff is not entitled to specific performance and there is no genuine issue of material fact to preclude summary judgment in favor of Defendant.

## IV. CONCLUSION

For the reasons set forth above, and other good cause shown, it is hereby ordered that Defendant's motion for summary judgment is granted. An Order will be entered consistent with this Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated: September 3, 2014